IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

RONNIE ANTHONY LUNA                                                                                          PLAINTIFF

v.                                    Civil No. 4:22-cv-04048-SOH-BAB

SHERIFF ROBERT GENTRY;
JAIL ADMINISTRATOR CHRIS WALCOTT;
JAILER ADRIAN HERNANDEZ; JAILER
ROMONA ARENAS; PROGRAM COORDINATOR
ELEUPERIO HERNANDEZ; JAILER BARBERA
VALENTNE; JAILER KIMBERLY MCBAIN;
JAILER/DEPUTY ANTHONY IRVIN; JAILER
BLAKE REEL; JAILER/PROGRAM DIR.
ANA MEJIA; JAILER WHITNEY HIGGINS;
and NURSE TAMMY FOWLER                                                                               DEFENDANTS

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Tammy Fowler's Motion to for Judgment on the Pleadings (ECF No. 87). Plaintiff did not respond and his time to do so has passed. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred the instant motion to the undersigned for the purpose of making a Report and Recommendation.

**I. PROCEDURAL BACKGROUND[1]**

Plaintiff filed his original Complaint and Motion to Proceed *in forma pauperis* ("IFP Motion") on June 1, 2022. (ECF Nos. 1, 2). The Court granted Plaintiff's IFP Motion on the same

---

[1] This case has a long and convoluted procedural background much of which is irrelevant to Defendant Fowler's instant Motion. Accordingly, the Court includes here only those filings which are relevant.

1

day.  (ECF No. 3).  Plaintiff subsequently filed two amended complaints, (ECF Nos. 6, 8), and one Motion to Supplement, (ECF No. 79).  The Court granted Plaintiff's Motion to Supplement and held the Motion to Supplement, (ECF No. 79), and Plaintiff's Second Amended Complaint (ECF No. 8) would be read together to state all of Plaintiff's claims.  (ECF No. 84).

Defendant Fowler filed her Motion for Judgment on the Pleadings and Brief in support on July 5, 2023.  (ECF Nos. 87-88).  The Court directed Plaintiff to respond to this Motion by July 27, 2023.  (ECF No. 89).  Plaintiff requested an extension of time to respond to Defendant Fowler's Motion and the Court granted such extension.  (ECF No. 92-93).  Plaintiff then failed to respond, and the Court entered an Order to Show Cause directing Plaintiff to respond to Defendant Fowler's Motion by October 19, 2023.  (ECF No. 95).  Plaintiff again failed to respond to Defendant Fowler's Motion.  However, Plaintiff did file two Motions to subpoena witnesses, (ECF Nos. 96-97), a Notice of Change of Address, (ECF No. 100), and two Motions to extend time to file a motion for summary judgment, (ECF Nos. 101, 106).

Plaintiff has been given ample time to respond to Defendant Fowler's Motion and the Court will now consider the Motion unopposed.

## II.   CLAIMS AND FACTS ALLEGED

Plaintiff is currently incarcerated in the Lexington Assessment and Reception Center in Lexington, Oklahoma.  His claims in this lawsuit stem from alleged civil rights violations while he was incarcerated in the Sevier County Detention Center ("SCDC"), in DeQueen, Arkansas, as a pretrial detainee.  Plaintiff sued Defendant Fowler in both her individual and official capacities.  Plaintiff is seeking compensatory and punitive damages.  (ECF No. 8).

In his Second Amended Complaint, Plaintiff alleges three claims against Defendant Fowler—Claim One, Claim Four, and Claim Five.[2]  First, Plaintiff claims, Defendant Fowler violated his rights by failing to provide a healthy, safe, and secure environment on April 27, 2022. Plaintiff alleges Defendant Fowler placed another inmate in his cell who was experiencing medication changes.  Further Plaintiff claims, Defendant Fowler failed to properly monitor this inmate or evaluate his reaction to the increase in medication.  (ECF No. 8, p. 6).

Next, in Claim Four of his Second Amendment Complaint, Plaintiff claims Defendant Fowler denied him access to the courts on April 27, 2022.  Plaintiff alleges:

> My discovery papers were destroyed when Justin [Velasquez] urinated on them.  I asked for [copies] or another copy of the papers and to this day I have never received them . . . Each defendant was aware that my discovery evidence was destroyed and has made no effort to obtain me another copy after asking multiple of times violating my rights (under color state law).

*Id*. at 9 (errors in original).

Lastly in Claim Five of his Second Amended Complaint, Plaintiff states Defendant Fowler was aware of "the incident" but failed to address it.  (ECF No. 8, p. 10).  Plaintiff goes on to allege:

> My papers were destroyed.  And I asked [repeatedly] for them to be replaced.  They never refused to do it but they just kept putting me off acting as though the incident never occurred.  Each one of these individuals violated my rights (under color of law).

*Id*. (errors in original).

When prompted to explain the official capacity claims alleged, Plaintiff stated:

> My rights were violated (under color of state law) after they made [copies] for my family but refused to make [copies] of my documents for me.  They returned the contaminated legal work to me . . ..

*Id*. at 11.

---

[2]  Plaintiff alleges a total of five claims against twelve defendants in his Second Amended Complaint.  However, the only claims at issue and addressed here, are those asserted against Defendant Fowler.  (ECF No. 8).

In his Supplement to Second Amended Complaint, Plaintiff states three additional claims against Defendant Fowler.[3]  First in Supplemental Claim One, Plaintiff alleges Defendant Fowler failed to train or supervise the SCDC staff while Plaintiff was incarcerated there.  Specifically, Plaintiff alleges:

> On April 27, 2022 Justin [Velasquez} who is nephew of ass. Jail administrator Romona Arenas was improperly housed in my cell (A3).  [Velasquez] had prior disturbances which were documented relating to his mental health status and medication in which he was removed from housing locations due to these disturbances.  Exposure to this inmate my safety and well being, ruined my only discovery motions on pending criminal cases.  Caused me emotional, psychiatric distress, and physical harm relating to the out come of my criminal convictions.  Tammy Fowler [and other Defendants] directly participated in the housing of [Velasquez] and where personally involved.  Even though it was brought to the staffs attention of these mental disturbances caused by [Velasquez] he was still improperly housed in general population.  Nurse Tammy Fowler and security staff violated policy by not coordinating with each other in rehousing [Velasquez] up on a change of dose in his current [medication].  [Velasquez] destroyed my legal paper work and discovery materials when he was sleep walking and urinated all over my paper work.  This occurred only days before my scheduled trial date in which I only had 2 days of receiving the paper work to study and be prepared.
>
> Even after this incident and my problems with [Velasquez] defendants intentionally kept moving him to the same housing location as I was housed.  Defendants were fully aware of [Velasquez] mental condition, schizophrenic out burst and anger problems.  This show total disregard for my safety . . .
>
> Medical Defendant nurse Fowler violated policy when she deliberately chose to not isolate observe, treat and house special needs inmate Justin [Velasquez], even though, he had prior history of disturbances and increased of dosage in his psych medicine.

(ECF No. 79, pp. 3-6).[4]

---

[3] The Court notes that even though Plaintiff labeled claims in his Supplement with the same numbers as claims from his Second Amended Complaint, the supplemental claims appear to be additional claims.
[4] Plaintiff makes additional allegations in this claim, but they are not against Defendant Fowler. Therefore, the Court finds them irrelevant to the consideration of Defendant Fowler's Motion for Judgment on the Pleadings.

Next, in his Supplemental Claim Two, Plaintiff alleges: Defendant Fowler intentionally exposed him to a mentally ill inmate and this constituted "mishandling, mishousing, and mistreatment." (ECF No. 79, p. 8) (errors in original). Plaintiff further alleges:

> On around 4-20-2022 Justin Belazquez was moved in to my cell by shift supervisor by Anthony Irvin. Prior to this Velazquez, who is on high doses of psych medicine had been housed in isolation. Due to his disturbances and violent nature. Velazquez had also been housed in General population but was removed after he threatened other inmates with his stick. Even though Velazquez had a history of violent misconduct due to his mental disorder, [other Defendants] and nurse Tammy Fowler disregarded my safety when they chose to have Antony Irvin place in my cell.
>
> Even after the incident when Velazquez was sleep walking and ruined my legal paper work he was removed from my cell only to return a few days later. Nurse Tammy Fowler and facility staff continued to improperly house Velazquez, every[ ]time I moved to a new housing location Velazquez was some how followed me. Staff were fully aware of the problems of Velazquez and my self but intentionally moved him in to my housing location.
>
> Velazquez mistreatment, mishousing, and improper handling contributed to my safety being jeopardized, emotional and mental distress, my legal materials being destroyed which effected process of my criminal proceedings, and led to intentional violation of my constitutional rights.

*Id*. at 8-9 (errors in original).[5]

Finally, Plaintiff claims Defendant Fowler denied him medical care. (ECF No. 79, p. 13). Plaintiff alleges that his hands began swelling on April 8, 2022. He submitted medical requests on this issue six times between May 30, 2022 and September 23, 2022. Plaintiff's pain was severe and the swelling intense. After seven months, Defendant Fowler told Plaintiff he did not have arthritis, but an x-ray "a few days later" changed Defendant Fowler's opinion. She then diagnosed him with arthritis. Plaintiff states: "I endured 7 months of pain and torture due to this delay of treatment and diagnosis." *Id*.

For his official capacity claim against Defendant Fowler here Plaintiff states:

---

[5] Plaintiff also makes an official capacity claim here, but it is only against the non-moving defendants.

> Turnkey medical services failed to follow the policies to properly diagnose and treat inmates with chronic medical conditions. Defendants down play the seriousness of inmates complaints which lead to unwantton infliction of pain and suffering.

*Id*. at 13-14 (errors in original).

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings.  The Court applies the same standard on a motion for judgment on the pleadings as it would on a Rule 12(b)(6) motion to dismiss for failure to state a claim.  *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

The legal standard for a motion for judgment on the pleadings under Rule 12(c) is the same standard as a motion to dismiss under Rule 12(b)(6). *See Westcott*, 901 F.2d at 1488 (noting the "distinction is purely formal" as courts review a Rule 12(c) motion for judgment on the pleadings under the same standard courts consider a Rule 12(b)(6) motion to dismiss).  A "judgment on the pleadings is appropriate when there are no material facts to resolve[,] and the moving party is entitled to a judgment [in his favor] as a matter of law." *Mills v. City of Grand Forks,* 614 F.3d 495, 497-98 (8th Cir. 2010).

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  The Court will consider well plead factual allegations in the Complaint as true, and construe all reasonable inferences from the pleadings in favor of the non-moving party. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  However, while the

Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support his claims. *See Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004).

Additionally, the Court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record in ruling upon a Rule 12(c) motion. *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999).

### IV.  DISCUSSION

As an initial matter the Court notes Defendant Fowler did not move for dismissal on all claims asserted against her. Defendant Fowler made a general argument regarding Mr. Velasquez's conduct and then moved for dismissal of Plaintiff's claims against Defendant Fowler regarding Plaintiff's medical care, failure to train, and all official capacity claims. The Court will address Defendant Fowler's arguments as they apply to each of Plaintiff's Claims.

#### A.  Claim One (Second Amended Complaint) and Claim Two (Supplement)

Defendant Fowler first argues Plaintiff has failed to state any cognizable claims based on Mr. Velasquez's conduct. Defendant Fowler failed to identify which of Plaintiff's claims they seek dismissal of with this argument. Therefore, the Court is left to presume Defendant Fowler intended this to address Plaintiff's Claim One from his Second Amended Complaint and Claim Two from his Supplement.

Defendant argues, related to Mr. Velasquez's conduct, that Plaintiff does not have standing to assert a claim regarding the medical care provided to another inmate. The Court agrees. However, Defendant Fowler has misinterpreted Plaintiff's claims here. Plaintiff clearly states in his Second Amended Complaint under Claim One that Defendant Fowler violated his rights by failing to provide a healthy, safe, and secure environment for Plaintiff. Plaintiff goes on to explain this failure occurred on April 27, 2022 when Mr. Velasquez—who was experiencing medication changes—was placed in Plaintiff's cell. (ECF No. 8, p. 6). Likewise, in Claim Two of his

7

Supplement, Plaintiff claims Defendant Fowler intentionally exposed him to a mentally ill inmate—Mr. Velasquez. (ECF No. 79, p. 8). Additionally, Plaintiff plainly states in his Supplement "Velazquez['s] mistreatment, mishousing, and improper handling contributed to my safety being jeopardized . . .." (ECF No. 79, p. 9). Both of these claims center on Plaintiff's exposure to the mentally ill inmate—Velasquez—and how that exposure caused injury to Plaintiff through the destruction of his legal papers. The Court interprets these claims as failure-to-protect claims pursuant to the Fourteenth Amendment.[6]

To prevail on a failure to protect claim, Plaintiff must establish: (1) he was "incarcerated under conditions posing a substantial risk of serious harm," and (2) prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The Court finds, even considering the facts alleged in a light most favorable to Plaintiff, no fact finder can find Plaintiff was incarcerated under conditions posing substantial risk of serious harm. The only injury asserted by Plaintiff as a result of being housed with Mr. Velasquez is the destruction of his legal papers, subsequent "mental anguish," "stress," and "physical harm relating to the [outcome] of my criminal convictions." (ECF No. 8, p. 11; ECF No. 79, p. 4). Plaintiff does not provide any explanation of the "mental anguish," "stress," or "physical harm" but simply lists the phrases. None of these allegations are sufficient to establish a cognizable Fourteenth Amendment violation under Section 1983 for failure to protect. *See Schoelch v. Mitchell*, 625 F.3d 1041, 1047 (8th Cir. 2010) (holding a pretrial detainee's Fourteenth Amendment Due Process claim for failure to protect and unconstitutional

---

[6] The Court notes Plaintiff makes comments throughout his Second Amended Complaint and Supplement as to improper treatment or housing of Mr. Velazquez, however, the Court does not construe these statements to allege any claim for denial of medical care for Mr. Velazquez.

conditions of confinement failed due to a lack of evidence showing the detainee suffered an "objectively serious mental or physical injury" as a result of the complained of conduct).

Additionally the Prison Litigation Reform Act "PLRA" provides, in pertinent part, that "[n]o federal civil action may be brought by a prisoner … for mental or emotional injury … without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004), the Eighth Circuit concluded that Congress intended this provision of the PLRA to "limit [] recovery for mental or emotional injury in all federal actions brought by prisoners."

Lastly, to the extent Plaintiff is claiming his criminal conviction was improper—thus an injury—such a claim is barred unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Plaintiff has produced no evidence or allegations in his complaint to meet the *Heck* requirements.

Accordingly, Plaintiff's Claim One in his Amended Complaint and Claim Two in his Supplement fail to state a cognizable claim under Section 1983 and should be dismissed.

### B. Claim Three (Supplement)

Next, Defendant Fowler argues Plaintiff has failed to state a cognizable claim for denial of medical care. This argument addresses Plaintiff's Claim Three from his Supplement in which he claims he was denied medical care for over seven months for arthritis in his hands.

In prisoner litigation, courts in the Eighth Circuit analyze denial of medical care claims under the deliberate indifference standard of the Eighth Amendment. *See e.g., Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (pretrial detainee has the same rights to medical care under

the Due Process Clause as an inmate has under the Eighth Amendment). The Court therefore examines Plaintiff's claims under the Eighth Amendment's deliberate indifference standard. *Id*.

To succeed on this type of claim, Plaintiff must demonstrate (1) that he had an objectively serious medical need, and (2) that the Defendants actually knew of, but deliberately disregarded, that serious medical need. *See Ivey v. Audrain Cty., Mo.*, 968 F.3d 845, 848 (8th Cir. 2020). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotations omitted). "To demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the [detainee's] health." *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (internal quotations and citations omitted). The Eighth Circuit has stated that this "onerous standard requires a showing more than negligence, more than even gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (internal quotations and citations omitted).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. Cty. of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis[,]" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotations omitted), unless the need for medical attention is obvious

10

to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald*, 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (holding a three-week delay, "coupled with knowledge of inmate-patient's suffering, can support a finding of an Eighth Amendment violation").

Here, Plaintiff alleges in his Supplement he suffered with intense swelling and severe pain in his hands for over seven months. He also alleges he filed at least six medical requests to Defendant Fowler on the issue.[7] Finally, he alleges Defendant Fowler diagnosed him with arthritis after seven months of suffering. The Court finds these allegations, considered in the light most favorable to Plaintiff as the Court must at this stage, state a viable delay of medical care claim against Defendant Fowler.

Defendants argue Plaintiff cannot state a viable delay of medical care claim without an allegation that the delay negatively impacted his prognosis. However, the Eighth Circuit has held that a delay claim may be stated when the defendant knows of pain and suffering experienced by the inmate or detainee and continues to delay treatment. *See Boyd*, 47 F.3d at 969 (knowledge of swollen mouth from impacted and infected wisdom teeth coupled with a three-week delay before referring to an oral surgeon can establish deliberate indifference); *see also Schaub v. VonWald*, 638 F.3d at 919 (holding verifying medical evidence unnecessary when the need for medical attention was obvious to a layperson). Plaintiff has stated such an allegation here when he alleged

---

[7] The Court notes Defendants argue Plaintiff was seen by Defendant Fowler six times. Plaintiff's Supplement does not state this nor is there any other evidence in the pleadings showing that Plaintiff was seen by Defendant Fowler regarding his hands. Instead, Plaintiff alleges he filed six medical requests to Defendant Fowler. (ECF No. 79, p. 13).

11

severe pain and intense swelling for over seven months coupled with the six medical requests sent to Defendant Fowler.

Finally, Defendants argue Plaintiff did not suffer any injury from the delay in medical care. However, Plaintiff alleges seven months of intense swelling and severe pain in his hands. The Court finds this is an adequate allegation of physical injury.

Accordingly, Plaintiff's Claim Three in his Supplement should survive for further litigation as Plaintiff has stated a claim upon which relief may be granted.

### C. Claim One (Supplement)

Defendant Fowler's third argument is that Plaintiff failed to allege sufficient facts to establish she had any personal involvement in the housing of Mr. Velasquez or Plaintiff, and supervisor liability is not a cognizable claim pursuant to Section 1983. Under a claim labeled "failure to train or supervise 8th 14th Amendment" Plaintiff stated:

> Tammy Fowler [and other Defendants] directly participated in the housing of [Velasquez] and where personally involved. Even though it was brought to the staffs attention of these mental disturbances caused by [Velasquez] he was still improperly housed in general population. Nurse Tammy Fowler and security staff violated policy by not coordinating with each other in rehousing [Velasquez] up on a change of dose in his current [medication].

(ECF No. 79, pp. 3-6) (errors in original).

In cases brought under Section 1983, supervisors are not liable for constitutional violations committed by their subordinates simply because they are their supervisors; instead, Plaintiff must plead each Defendant, "through [his] own individual actions," has violated the Constitution. *Marsh v. Phelps Cty*, 902 F.3d 745, 754 (8th Cir. 2018). (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Supervisors are only liable for their own misconduct. *Ashcroft*, 556 U.S. at 677. Plaintiff's allegations, considered in the light most favorable to Plaintiff as the Court must at this

12

stage, alleged individual involvement of Defendant Fowler. Thus, the Court finds his claim is not based on supervisory liability.

However, a prison supervisor can be held liable for failing to train or supervise subordinates when that failure caused the constitutional violation. *Tilson v. Forest City Police Dept.*, 28 F.3d 802, 806 (8th Cir. 1994). To state an individual capacity claim for failure to train or supervise there must be allegations: (1) the supervisor knew of a pattern of unconstitutional acts committed by the subordinate; (2) the supervisor demonstrated deliberate indifference to, or unspoken authorization of, constitutional violations committed by subordinates; (3) the supervisor failed to take appropriate remedial action after learning of a subordinate's misconduct; and (4) the plaintiff was injured as a result of the failure to properly train or supervise subordinates. *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997). The standard for proving deliberate indifference is high. Even where prison officials know of a substantial risk to inmate health or safety, they are not liable, "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

While Plaintiff has stated sufficient factual allegations to meet the first three elements of a failure to train claim, again Plaintiff has failed to allege sufficient facts to establish he was injured as a result of Defendant Fowler's conduct. *See supra,* Section IV. A. Thus Plaintiff has failed to allege facts to satisfy the fourth element of a failure-to-protect claim. Accordingly, Plaintiff's Claim One in his Supplement should be dismissed for failure to state a claim upon which relief may be granted.

### D.  Official capacity claims

Lastly, Defendant Fowler argues Plaintiff has failed to state a cognizable official capacity claim against Defendant Fowler.  The Court agrees.  While Plaintiff alleges multiple times in his Second Amended Complaint and Supplement how policies and customs of the SCDC violated his constitutional rights, he only makes one allegation against Defendant Fowler's employer—TurnKey:

> Turnkey medical services failed to follow the policies to properly diagnose and treat inmates with chronic medical conditions.  Defendants down play the seriousness of inmates complaints which lead to unwantton infliction of pain and suffering.

(ECF No. 79, pp. 13-14) (errors in original).

"Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Gorman v Bartch*, 152 F.3d 907, 914 (8th Cir. 1998).  Official capacity claims are "functionally equivalent to a suit against the employing governmental entity."[8]  *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).  To sustain an official capacity claim against such an entity a plaintiff "must show that there was a policy, custom, or official action that inflicted an

---

[8] The Court takes judicial notice that Turnkey, a private medical care company, was contracted to provide medical care at the SCDC during the time at issue, and Defendant Fowler appears to be an employee (or former employee) of TurnKey.  Medical providers who contract to provide medical care for incarcerated persons are state actors acting under color of state law for the purposes of Section 1983.  *See Davis v. Buchanan Cty., Missouri*, 11 F.4th 604, 617 (8th Cir. 2021). *See also West v. Atkins*, 487 U.S. 42, 57, (1988) (because the provision of medical services to inmates is "state action fairly attributable to the State," medical personnel act "under color of state law for purposes of [Section] 1983"); *Montano v. Hedgepeth*, 120 F.3d 844, 849–50 (8th Cir. 1997) ("physicians working in state prisons, who help to fulfill the state's Eighth Amendment obligation to inmates and who typically are the only health professionals available to care for incarcerated persons, are persons who may fairly be said to be state actors.").

actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). Thus, Plaintiff's official capacity claim against Defendant Fowler is "functionally equivalent," *Veatch*, 627 F.3d at 1257, to alleging her employer, Turnkey, had "a policy, custom, or [took an] official action" that deprived him of his constitutional rights, *Johnson*, 452 F.3d at 973.

To establish a claim for "custom" liability, Plaintiff must demonstrate: (1) "The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;" (2) "Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the official of that misconduct;" and (3) "That Plaintiff was injured by acts pursuant to the government entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Johnson v. Douglas Cty Medical Dept.*, 725 F.3d 825, 828 (8th Cir. 2013). "A single deviation from a written, official policy does not prove a conflicting custom." *Id.* (internal quotations omitted).

Here, Plaintiff did not allege a policy or custom of Turnkey violated his constitutional rights. Instead, he claims a failure to follow policy by Defendant Fowler and TurnKey was the cause of his violated rights. This fails to state an official capacity claim upon which relief can be granted.

Accordingly, all official capacity claims against Defendant Fowler should be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### E.  Claims Four and Five (Second Amended Complaint)

Plaintiff made two additional claims against Defendant Fowler, which were not addressed in the Motion for Judgment on the Pleadings. However, the Court may on its own initiative dismiss claims for failure to state a claim. *See Buckley v. Ray*, 848 F.3d 855, 867 n.9 (8th Cir. 2017); *Smith v. Boyd*, 945 F.2d 1041, 1042-1043 (8th Cir. 1991); *Mildfelt v. Circuit Court*, 827 F.2d 343, 345

(8th Cir. 1987) (per curiam). Dismissal is appropriate where a "plaintiff cannot possibly prevail and amendment would be futile." *Bucklew v. Lombardi*, 783 F. 3d 1120, 1127 (8th Cir. 2015). Furthermore, the Court has an obligation to screen Plaintiff's claims pursuant to the PLRA and dismiss any claims which fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

Plaintiff's Claim Four from his Second Amended Complaint alleges Defendant Fowler denied him access to the Courts. The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Lewis v. Casey*, 518 U.S. 343, 346 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817 (1997)). Nevertheless, the Supreme Court "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Instead, prison officials must provide "some means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bear v. Fayram*, 650 F.3d 1120, 1123 (8th Cir. 2011) (internal quotations and citations omitted). These means may include, but are not limited to: prison libraries; jailhouse lawyers; private lawyers on contract with the prison; or some combination of these and other methods. *Id.*

An inmate cannot prevail on an access-to-courts claim unless he can demonstrate he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis*, 518 U.S. at 351-2; *see also Farver v. Vilches*, 155 F.3d 978, 979-80 (8th Cir. 1998) (per curiam); *Klinger v. Dep't of Corr.*, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic); *McMaster v. Pung*, 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of

16

meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008) (internal quotation and citations omitted).

Plaintiff states in his Second Amended Complaint that copies of his legal papers were made and provided to his family. (ECF No. 8, p. 8). Plaintiff also states he was returned the copies on which Mr. Velasquez urinated. (ECF No. 8, p. 11). Furthermore, Plaintiff was also represented in his criminal case during the time his legal papers were destroyed. (ECF No. 79, p. 10). Considering these facts alleged by Plaintiff, he was not denied access to the courts. *See Bear v. Fayram*, 650 F.3d at 1123. Accordingly, Plaintiff has failed to state a claim upon which relief can be granted in Claim Four of his Second Amended Complaint, and such claim should be dismissed.

Plaintiff's Claim Five from his Second Amended Complaint alleges Defendant Fowler was aware of the incident in which Mr. Velasquez urinated on Plaintiff's legal papers, but she refused to replace the legal papers. Plaintiff goes on to explain this claim by saying Defendant Fowler (or possibly other Defendants) provided copies of his legal papers to his family but not to him. Instead, Plaintiff received his original legal papers back with urine on them. (ECF No. 8, p.11).

The Court interprets this Claim Five to be either a reiteration or extension of Plaintiff's access-to-courts claim, or one for property deprivation. If the former, the same analysis as enumerated under Claim Four above applies and Plaintiff has failed to state a cognizable Section 1983 claim for access to the courts. If, the later, then plaintiff has failed to state a cognizable Section 1983 claim because there is no constitutional claim under Section 1983 for loss of property.

17

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Courts have interpreted procedural due process considerations as imposing "constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Walters v. Wolf*, 660 F.3d 307, 311 (8th Cir. 2011) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Assuming, without deciding, that Plaintiff has a recognized property interest in his legal papers, the question, then becomes what process Plaintiff is owed for the loss of that property.

In answering this question, the Supreme Court has usually held that "the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). "In some circumstances, however, the Court has held that a statutory provision for a post deprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." *Id.* at 128. The Supreme Court has held, moreover, that such circumstances include "cases where the predicate deprivation is, or is akin to, a tortious loss of a prisoner's property resulting from a random unauthorized act by a state employee—versus some established state procedure." *Walters*, 660 F.3d at 312 (quoting *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). "The loss of property ... is in almost all cases beyond the control of the [government], in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." *Id.*

This is exactly one such case. Assuming Plaintiff has a property interest in his legal papers and Defendant Fowler deprived him of his property when she housed Plaintiff with Mr. Velasquez, a post-deprivation hearing is all the process Plaintiff is due. *See Hudson v. Palmer*, 468 U.S. 517,

18

533 (1984) (intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available). Arkansas law provides such a post-deprivation remedy through an action for conversion. *See e.g., Elliott v. Hurst*, 817 S.W.2d 877, 880 (Ark. 1991) (cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right). Accordingly, Plaintiff's claim concerning the loss of his legal papers does not establish a cognizable Section 1983 claim, and Plaintiff's Claim Five from his Second Amended Complaint should be dismissed.

## V.  CONCLUSION

For the foregoing reasons, I recommend Defendant Fowler's Motion for Judgment on the Pleadings (ECF No. 87) be **GRANTED in part and DENIED in part** with (1) Plaintiff's Claims One, Four, and Five from his Second Amended Complaint and Plaintiff's Claims One and Two from his Supplement, as they apply to Defendant Fowler, be dismissed without prejudice; (2) all official capacity claims against Defendant Fowler be dismissed without prejudice; and (3) Plaintiff's Claim Three, for denial or delay of medical care, from his Supplement remaining for further litigation.

**Referral Status**:  This case should remain referred for all matters not disposed of in this Order.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger *de novo* review by the district court.**

**DATED** this 18th day of January 2024.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE